IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESLEY BRENNAN, | : | Civil No. 3:15-cv-2092 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| KRISTA FISHER, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

I. **Background**

Plaintiff, Wesley Brennan, a former inmate housed at the State Correctional Institution, Huntingdon, Pennsylvania, ("SCI-Huntingdon"), initiated the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 27). Brennan's claims relate to his participation in, and purported self-removal from, the sex offender treatment program at SCI-Huntingdon. (*Id.* at pp. 3-6). Brennan sets forth claims pursuant to the Eighth and Fourteenth Amendments, as well as state law claims under the Pennsylvania Constitution and criminal statutes. (*Id.* at pp. 2, 6-10). The named Defendants are Krista Fisher and Christine Neri, Psychological Services Specialists at SCI-Huntindgon, and David Morningstar, previously employed as a Unit Manager at SCI-Huntingdon. (*Id.* at p. 3).

Presently pending before the Court is Defendants' motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 36). For the following reasons, the motion for summary judgment will be granted.

## II. Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III. Allegations of the Amended Complaint

Brennan alleges that on December 23, 2013, Defendants Fisher and Neri warned

him that he would be removed from the sex offender treatment program unless he admitted to having sexual contact with several minor victims. (Doc. 27, p. 3, ¶ 7). Later that evening, Brennan allegedly received a "60 Day Notice" further advising him that he would be removed from the sex offender treatment program unless he demonstrated progress in his treatment. (Doc. 27, p. 3, ¶ 8; Doc. 27, p. 13). The 60 Day Notice provided as follows:

> This 60 day notice is to inform you that you are not taking full responsibility for your sex offense. In order to provide you appropriate sex offender treatment, it is important that you admit to and take full responsibility for all of your sex offenses. Accepting responsibility is not repeating what someone said you did, reciting the Affidavit of Probable Cause, or just saying that you accept responsibility. Although you admit to some details of the offense, you still are not admitting to or accepting responsibility for other crucial details of other offenses. When prompted for additional detailed information, you begin to use thinking errors; changing the subject, distracting, etc. In addition, your assignments have been less than adequate, resulting in them having to be reassigned. This lack of responsibility taking and utilization of concepts interferes with your ability to gain and utilize the information and knowledge presented to you. Statements, behaviors, and/or attitudes such as these jeopardize your continuation in treatment. You will have 60 days or the end of Phase 1 to demonstrate progress in these areas or you will be removed from the sex offender treatment program.

(Doc. 27, p. 13).

On December 27, 2013, Brennan submitted an "Inmate's Request to Staff Member" to Defendant Morningstar regarding his alleged victims, and requesting "documentation that shows that [he has] several victims." (Doc. 27, p. 4, ¶ 9; Doc. 27, p. 14). On December 31, 2013, Defendant Morningstar replied to Brennan: "You don't know who your victims are? Who is telling you? I can confirm that based on all your sexual crimes you do have more

than one victim." (Doc. 27, p. 4, ¶ 10; Doc. 27, p. 14).

On January 1, 2014, Brennan submitted an "Inmate's Request to Staff Member" to Defendant Fisher requesting "the exact number of victim(s)" listed on his record. (Doc. 27, p. 4, ¶ 11; Doc. 27, p. 15). On January 2, 2014, Defendant Fisher replied to Brennan: "You know how many victims you have." (Doc. 27, p. 4, ¶ 12; Doc. 27, p. 15).

On January 27, 2014, Brennan received a Correctional Plan Evaluation from Defendant Fisher noting that he removed himself from the sex offender treatment program, and failed the plan. (Doc. 27, p. 4, ¶ 14). The Correctional Plan Evaluation contains the following comments:

> Mr. Brennan failed to demonstrate an understanding of concepts or apply them to his offenses. When confronted or challenged, he would become defensive and begin to change the subject and distract. In addition, he was avoidant with answering questions. Mr. Brennan arrived for group claiming that he was told that he had to be there. It was explained that it was a recommended group and he can refuse the recommendation. When asked if he was or was not willing to participate, he stated, "No."

(Doc. 27, p. 19).

On February 14, 2014, Brennan submitted an "Inmate's Request to Staff Member" to Defendant Morningstar requesting to review a document for inaccuracies. (Doc. 27, p. 4, ¶ 15; Doc. 27, p. 20). On February 21, 2014, Defendant Morningstar denied his request. (Doc. 27, p. 4, ¶ 16; Doc. 27, p. 20).

On July 1, 2014, Brennan submitted an "Inmate's Request to Staff Member" to

Defendant Fisher explaining that he requested a copy of the records of his original criminal case. (Doc. 27, p. 4, ¶ 17; Doc. 27, p. 21). Brennan further explained that a conviction in his underlying criminal case was expunged. (*Id.*). On July 11, 2014, Defendant Fisher replied to Brennan: "You are held accountable for your convictions. I have nothing to do with records or legal documents." (Doc. 27, p. 4, ¶ 18; Doc. 27, p. 21).

On July 15, 2014, Brennan filed Grievance Number 518711 against Defendant Fisher regarding his removal from the sex offender group. (Doc. 27, p. 4, ¶ 19; Doc. 27, p. 22). In the grievance, Brennan complained that he was removed from the group because he would not admit to sexually assaulting his other victims. (Doc. 27, p. 23). He stated that he would not admit to sexually assaulting these individuals because the records of his criminal convictions for those assaults were expunged. (*Id.*). Brennan further stated that his grievance was timely because it was filed within fifteen days of Defendant Fisher's July 11, 2014 response to his Inmate Request to Staff Member. (*Id.* at p. 22).

On July 17, 2014, Grievance Number 518711 was rejected as untimely. (Doc. 27, p. 4, ¶ 20; Doc. 27, p. 24). The grievance coordinator advised Brennan that he may resubmit his grievance if he provided information or dates to show its timeliness. (Doc. 27, p. 24).

On August 15, 2014, Brennan appealed to the Facility Manager. (Doc. 27, p. 5, ¶ 21; Doc. 27, p. 26). On appeal, the Facility Manager upheld the rejection of Brennan's grievance as untimely. (Doc. 27, p. 5, ¶ 21; Doc. 27, p. 25). Brennan claims that he

appealed his grievance to final review. (Doc. 27, p. 5, ¶ 22).

## IV. Discussion

### A. Exhaustion of Administrative Review

Defendants seek to dismiss the amended complaint or, in the alternative, seek an entry of summary judgment based on Brennan's failure to exhaust available administrative review procedures. (Doc. 31, pp. 10-13). Specifically, Defendants argue that Brennan failed to grieve his self-removal from the sex offender treatment program until approximately 169 days afterwards, and thus he has failed to exhaust his administrative remedies. (*Id.*). Further, Defendants argue that because Brennan failed to grieve any conduct on the part of Defendants Neri and Morningstar, he has failed to exhaust his administrative remedies with respect to any claims against them. (*Id.*).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v.*

*Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

Further, the PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); *Rivera v. Pa. Dep't of Corr.*, 388 F. App'x 107, 108 (3d Cir. 2010) ("An inmate must exhaust his administrative remedies *prior* to filing a civil action in federal court.") (emphasis added). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See *Spruill*, 372 F.3d 218. "As for the failure to [] identify [the] named defendants on the grievance form, . . . to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's

failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005).

The Pennsylvania Department of Corrections ("DOC") Inmate Grievance System Policy consists of a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. DC-ADM 804, § 1(A)(9). "The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim. The statement of facts shall include the date, approximate time and location of the event(s) that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, § 1(A)(12). Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. DC-ADM 804, § 2(A)(1). Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. DC-ADM 804, § 2(B). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must

exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

Defendants contend that Brennan failed to file his grievance within fifteen working days of his removal from the sex offender treatment program, and has therefore failed to exhaust his administrative remedies. (Doc. 31, pp. 10-13). As stated *supra*, pursuant to DC-ADM 804, "[t]he inmate must submit a grievance to the Facility Grievance Coordinator within 15 working days after the event upon which the claim is based." (Doc. 31-1, Ex. 1, Attach. A, p. 11, ¶ 10, DC-ADM 804, § 1(A)(9)). Brennan removed himself from the sex offender treatment program on January 27, 2014. (Doc. 27, p. 19, ¶ 14). Brennan did not file a grievance related to his self-removal from the sex offender treatment program until July 15, 2014, well beyond the fifteen working days. (Doc. 27, p. 22, ¶ 19). Brennan's grievance, filed approximately 169 days after he removed himself from the sex offender treatment program, was patently untimely. Because Brennan's grievance was untimely, he has failed to exhaust his administrative remedies.

In certain circumstances, a prisoner may be excused from the exhaustion requirement. The Third Circuit recognizes a "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F.

10

App'x 365, 368 (3d Cir. 2002). An inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368. The Third Circuit has recently stated that the institution "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016). In the present matter, Brennan does not allege, nor does he present any affirmative evidence, that he was he misled or ignored by prison officials, was impeded in filing a grievance, or that some other extraordinary circumstance prevented him from complying with the grievance process. *See* (Doc. 27). Rather, Brennan contends that he has properly exhausted his administrative remedies. Brennan claims that his grievance was timely filed within fifteen working days of Defendant Fisher's July 11, 2014 response to his Inmate Request to Staff Member, and that he timely placed his grievance appeal to final review in the hands of prison staff. (Doc. 27, p. 4, ¶ 19; Doc. 27, p. 10, ¶ 62; Doc. 27, p. 22; Doc. 42). For the following reasons, the Court finds both arguments unavailing, and finds that Brennan failed to present any evidence that he properly exhausted his administrative remedies.

In Grievance Number 518711, Brennan claimed that it was timely because it was filed within fifteen working days of Defendant Fisher's July 11, 2014 response to his Inmate Request to Staff Member. (Doc. 27, p. 22). However, Defendant Fisher's July 11, 2014 response is not the basis of his grievance, and is not relevant to the timely filing of the grievance. As provided in DC-ADM 804, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review within fifteen days *"after the event upon which the claim is based."* (Doc. 31-1, Ex. 1, Attach. A, p. 11, ¶ 10, DC-ADM 804, § 1(A)(9) (emphasis added)). The event giving rise to Brennan's claim occurred on January 27, 2014, when he removed himself from the sex offender treatment program. (Doc. 27, p. 19, ¶ 14). Several months later, on July 15, 2014, Brennan filed a grievance against Defendant Fisher regarding his removal from the sex offender group. (Doc. 27, p. 4, ¶ 19; Doc. 27, p. 22). In the grievance, Brennan claimed that he was removed from group because he would not admit to sexually assaulting certain victims. (Doc. 27, p. 23). He asserted that he would not admit to sexually assaulting these individuals because the criminal convictions for those assaults were expunged. (*Id.*).[1] Brennan's grievance clearly related to his removal from the sex offender treatment program, and he was required to file the grievance within fifteen

---

[1] In the grievance, Brennan also claimed that his removal from the sex offender treatment program "has seriously jeopardize[d] [his] chances for parole." (Doc. 27, p. 23). In an effort to ascertain the custodial status of Brennan, the Court accessed the Vinelink online inmate locator, which revealed that he has been paroled. Upon entering Brennan's offender identification number, KR1590, into online system, https://vinelink.com/#/search, his status was returned as: "out of custody...paroled."

days of his removal from the program. Thus, the grievance was not timely filed.

Brennan also argues that he exhausted his administrative remedies when he handed his appeal to final review of Grievance Number 518711 to prison staff for mailing. (Doc. 27, p. 10, ¶ 62; Doc. 42, pp. 1-2). However, Defendants do not contend that Brennan failed to timely appeal Grievance Number 518711 to final review, and do not seek an entry of judgment in their favor on this basis.[2] (Doc. 43, pp. 4-5). Brennan's argument is not responsive to Defendants' contention that he failed to file his grievance within fifteen working days of his removal from the sex offender treatment program. For these reasons, the Court finds that there is no genuine dispute of fact that Brennan failed to timely grieve his self-removal from the sex offender treatment program.

A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See *Anderson*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Brennan has failed to meet his burden with respect to the administrative exhaustion of his

---

[2] The Secretary's Office of Inmate Grievances and Appeals has no record of Brennan submitting an appeal to final review of Grievance Number 518711. (Doc. 31-1, Ex. 1, ¶ 3).

claim related to his removal from the sex offender treatment program. Defendants are therefore entitled to an entry of summary judgment on this claim.

Defendants next argue that Brennan failed to exhaust any claims against Defendants Neri and Morningstar because he failed to file a grievance against either Defendant regarding their alleged conduct. (Doc. 31, pp. 12-13). Attached to the amended complaint is Grievance Number 518711, wherein Brennan only names Defendant Fisher. (Doc. 27, pp. 22-23). As noted above, the standard used in determining whether a prisoner has exhausted the administrative process is whether he complied with the applicable grievance procedures and rules. The relevant policy and the pertinent language states that "[t]he inmate shall identify individuals directly involved in the event(s)." (Doc. 31-1, Ex. 1, Attach. A, p. 11, ¶ 12(b), DC-ADM 804, § 1(A)(12)(b)). The *Spruill* Court found that a similar provision in the earlier version of DC-ADM 804,[3] required an inmate to name the individuals in the grievance against whom the inmate eventually brings suit. As explained in *Spruill*, "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Spruill*, 372 F.3d at 234. The current version is even more compelling given the inclusion of the phrase "shall identify." (Doc. 31-1, Ex. 1, Attach. A, p. 11, ¶ 12(b), DC-ADM 804, § 1(A)(12)(b)).

---

[3] The earlier version stated that "[t]he inmate shall include a statement of facts relevant to the claim. . . . The inmate should identify any persons who may have information that could be helpful in resolving the grievance." DC-ADM 804 § VI(A)(1)(g) (effective date May 1, 2002).

Although Brennan failed to file a brief in opposition to Defendants' dispositive motion, he filed a motion (Doc. 42), briefly addressing the exhaustion issue. Brennan does not dispute that he failed to include any claims against Defendants Neri and Morningstar in Grievance Number 518711, and does not dispute that he failed to utilize the DOC's Inmate Grievance System with respect to these Defendants. "[I]t is clear, regardless of the purpose of the requirement, that *Spruill* requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." *Hemingway v. Ellers*, 2008 WL 3540526, at *11 (M.D. Pa. 2008) (citing *Williams*, 146 F. App'x at 557). Moreover, under *Spruill*, it is the plaintiff's burden to explain why he did not name a defendant in the grievance. See *Spruill*, 372 F.3d at 234 ("Spruill did not [name Brown in his grievance], and has offered no explanation for his failure to do so"). Brennan offers no explanation as to why he did not name Defendants Neri and Morningstar in his grievance, and there is no genuine dispute of fact as to Brennan's failure to grieve any conduct on the part of these Defendants. Consequently, Defendants Neri and Morningstar are entitled to an entry of summary judgment in their favor.

B.   **State Law Claims**

Brennan's state law claims against the Defendants will be dismissed. A district court may decline to exercise supplemental jurisdiction over a state law claim or claims if the district court dismisses those claims over which it has original jurisdiction. See 28 U.S.C. §

1367(c)(3). Since the claims that form the basis of this Court's jurisdiction under 42 U.S.C. § 1983 will be dismissed at the summary judgment phase, the Court declines to exercise supplemental jurisdiction.

## V. Conclusion

Based on the foregoing, Defendants' motion for summary judgment will be granted. A separate Order shall issue.

Date: January 12, 2017

Robert D. Mariani
United States District Judge